IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ROBERT E. BAKER,

                    Plaintiff,

       vs.                            Civil Action No.
                                       3:05-CV-089 (LEK/DEP)

JO ANN B. BARNHART, COMMISSIONER
  OF SOCIAL SECURITY,

                    Defendant.

_____

APPEARANCES:                   OF COUNSEL:

FOR PLAINTIFF:

HINMAN, HOWARD LAW FIRM     EUGENE D. FAUGHNAN, ESQ.
P.O. Box 5250
700 Security Mutual Bldg.
Binghamton, NY 13902-5250

FOR DEFENDANT:

HON. GLENN T. SUDDABY        WILLIAM H. PEASE, ESQ.
United States Attorney           Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York  13261-7198

OFFICE OF GENERAL COUNSEL   BARBARA L. SPIVAK, ESQ.
Social Security Administration    Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278            ANDREEA LECHLEITNER, ESQ.
                                 Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Robert E. Baker, who suffers principally from a cervical and lumbar disc condition resulting in shoulder, arm, back and leg pain, has commenced this proceeding pursuant to 42 U.S.C. § 405(g), seeking judicial review of the denial of his application for disability insurance benefits under the Social Security Act.  In support of his challenge plaintiff asserts that the determination that he is not disabled, a finding upon which the denial of benefits hinges, is not supported by substantial evidence in the record which was before the agency.  Plaintiff also maintains that the Administrative Law Judge ("ALJ") who upheld the agency's denial of benefits, based upon that finding of no disability, improperly rejected both contrary opinions of plaintiff's treating physicians and his testimony regarding the pain which he experiences and the limitations which it imposes on his ability to perform work-related functions.

Based upon a careful review of the record, considered in the light of plaintiff's arguments, I find that the Commissioner's determination resulted from the application of proper legal principles and garners the support of substantial evidence in the record.  Accordingly, I recommend the entry of

2

judgment on the pleadings dismissing plaintiff's complaint.

I.      BACKGROUND

Plaintiff was born on November 3, 1955; at the time of the administrative hearing in this matter, he was forty-seven years old. Administrative Transcript at pp. 51, 54, 294.[1]  At the relevant times plaintiff has resided in Newark, New York with his girlfriend and the daughter of his girlfriend's sister.[2]  AT 296.

Plaintiff is a high school graduate.  AT 294.  After receiving his high school diploma, plaintiff served in the United States Army, both on active duty and in the reserves.  AT 86, 296.  While not currently working, in addition to this military experience plaintiff has been employed in various settings, including as a driver for a bus transporting disabled individuals, and as a school bus driver.  AT 86, 295-96.  Plaintiff last worked for three months, ending in or about July of 2001, as a laborer installing pools and pool-related products.  *Id.*

On July 13, 2001, plaintiff presented at the Chenango Memorial

---

[1]    Portions of the administrative transcript of evidence and procedures before the agency (Dkt. No. 4), filed by the Commissioner together with her answer, will hereinafter be cited as "AT _____".

[2]    While plaintiff testified during the administrative hearing that the child residing with him was the daughter of his girlfriend's sister, in a prior written submission to the agency he described her as his girlfriend's daughter.  *See, e.g.,* AT 85.

Hospital, complaining of having experienced progressively worsening shoulder pain, with radicular symptoms into the arms and hands, over the previous three weeks.  *See* AT 166.  Upon examination, plaintiff was diagnosed with neuropathy, treated with Anaprox and Skelaxin, and advised to wear a sling and to apply moist heat and remain out of work for the next four days.  *See id.*

Plaintiff followed up by seeking out treatment from the Veteran's Administration ("VA") Hospital in Syracuse, New York on July 26, 2001, where he was seen by Christopher Watts, who is apparently a physician's assistant ("PA").  AT 166-67.  After a physical examination which was recorded as largely unremarkable, PA Watts diagnosed plaintiff as suffering from neuropathy, prescribed Naproxen, ordered an EMG study, and recommended "ice to heat" and a physical therapy consultation.  AT 166.  EMG testing, conducted at the Syracuse VA Hospital on that same day, revealed only slight polyphasicity of the right first dorsal interosseous and slight median nerve compression at the wrist.  AT 157.

On October 23, 2001, plaintiff was again seen by PA Watts, who noted that Baker was doing better with physical therapy and, while experiencing dizzy spells, was otherwise well and without additional

4

complaints.  AT 154.  As before, the results of a physical examination
conducted by PA Watts on that date were noted as largely benign.  *Id.*
Based upon his evaluation, PA Watts diagnosed plaintiff as suffering from
cervical spondylosis.  *Id.*

After meeting with PA Watts, plaintiff continued making periodic
visits to the Syracuse VA facility, where he was referred to and seen by
professionals within the Neurosurgery Department on November 26, 2001.
AT 151-52.  Upon examination on that date it was determined that plaintiff
had full motor strength, though with some digit weakness bilaterally and a
slightly weaker grip on the left side than on the right.  *Id.*

X-rays were taken on July 26, 2001 of cervical and lumbar spine
areas.  AT 171-72.  The results of those cervical spine x-rays revealed
that plaintiff's neck was normally aligned and maintained the proper
curvature; those x-rays did, however, reflect some narrowing and slight
osteophytic formation in the C-3 through C-7 range, characterized as
slight in the C3-4 and C6-7 spaces with more moderate narrowing and
osteophytic formation at C4-5 and C5-6.  AT 172.  Those x-rays also
revealed some slight encroachment upon the neural foramina of those
levels.  *Id.*  Lumbar spinal x-rays taken on that same date revealed only

slight displacement, including at the L4-5 level secondary to facet degenerative changes, with slight osteophytic formation at L3, L4 and L5.[3] AT 172.

On December 11, 2001, plaintiff was seen by Dr. Victor Sukumar, a staff physician with the VA facility in Sydney, New York who had apparently seen the plaintiff in July of 2001, although the records are equivocal on this score.  AT 149-51.  Based upon his examination, Dr. Sukumar observed that plaintiff was a well built male who appeared to be comfortable.  AT 150.  Following an examination, which was largely unremarkable, with no findings of any motor or sensory deficit, Dr. Sukumar diagnosed the plaintiff as suffering from back pain and advised him to continue taking Etodolac, a drug prescribed by neurosurgeons in Syracuse, and to return in one year, or sooner if necessary.  *Id.*

On November 26, 2001 plaintiff was examined by professionals within the VA's Neurosurgery Department.  AT 151-52.  Based upon that examination and a review of the MRI and nerve conduction studies, it was

---

[3]    X-rays taken in March of 2002 also indicated the existence of disc space narrowing and mild degenerative changes.  AT 194.  Magnetic resonance imaging ("MRI") testing performed in September of 2001 confirmed the existence of cervical spondylosis, multilevel disk disease, multilevel cord compression and multilevel neural foraminal stenosis.  AT 147-48, 176.

determined that plaintiff suffers from some "disk protrusions" and neuroforaminal stenosis with "significant osteophyte formation at multiple levels" in the cervical spine area.  *Id.*  At that point, however, plaintiff was not viewed as a candidate for surgery, with continued conservative management instead being recommended, subject to the restriction that plaintiff refrain from lifting and pulling.  *Id.*

Plaintiff was admitted into the Chenango Memorial Hospital in December of 2002, after experiencing chest pains.  AT 203-52.  Following three days of medical testing and observation, Baker was discharged on December 20, 2002.  AT 205.  The portion of the plaintiff's discharge summary associated with that hospitalization which is contained within the record reflects no acute findings and a final diagnosis, *inter alia*, of "[c]hest pain, non-diagnostic, possible underlying coronary artery disease."[4,5] AT 205.  Plaintiff was not treated or examined again for his neck and back

---

[4]   In his decision, the ALJ who decided the matter rejected plaintiff's cardiac condition as sufficiently severe to qualify at step two of the relevant, sequential evaluation as a sufficiently severe impairment to significantly restrict his ability to perform basic work activities.  AT 17.  In his brief, plaintiff does not challenge this finding.

[5]   From the fact that the first page of plaintiff's discharge summary ends mid-sentence, it is evident that at least one page of that a record is missing.  *See* AT 205. This void is not critical, however, in light of the fact that plaintiff does not press his coronary condition as a basis for finding disability.

conditions by VA health providers until July 2, 2003, when he was examined by Dr. John Regan at the Syracuse VA Center.  AT 266-67. During that visit, Baker reported that he had been doing well with his back pain until a few days earlier when, after diving several times into a municipal swimming pool, he began to experience more pain.  AT 266. Based upon his examination, which reflected a "mild" decrease in lumbar spine flexion and a mildly positive straight leg raising test, but with full motor strength, Dr. Regan advised plaintiff to swim daily in order to increase his range of motion, and to do stretching exercises but to avoid diving.  AT 267.  During a follow-up visit with Dr. Regan on November 25, 2003, plaintiff advised that the recommended home treatment program was working for him and helping to control his symptoms.  AT 271.

Plaintiff again returned to visit Dr. Regan on January 6, 2004.  AT 264-65.  During that visit plaintiff advised that he felt fine except on cold days, when he would typically experience increased neck and low back discomfort.  AT 265.  An examination conducted on that date revealed a full range of motion of the lumbar spine, leading Dr. Regan to note that plaintiff's musculoskeletal symptoms appeared to have stabilized.  AT 265.

In addition to these treating sources, plaintiff has been consultatively examined on several occasions.  Plaintiff was seen on November 19, 2001 by Dr. Glenn B. Axelrod for an independent medical examination, related apparently to an application by him for workers' compensation benefits.[6]  AT 146-48.  Based upon his examination, Dr. Axelrod found that plaintiff had a full range of motion in his neck, with no low back tenderness, but that he suffered from right sided neck pain with head compressions.  AT 147.  As a result of his findings, Dr. Axelrod diagnosed plaintiff as suffering from cervical spondylosis not causally related to the asserted July 17, 2001 injury.  AT 148.

Plaintiff was next examined in March of 2002 by Dr. Albert B. Kochersperger, an orthopedic specialist.  AT 187-88.  Dr. Kochersperger's examination revealed a full range of motion in the cervical spine region, full shoulder motion, and right lower lumbar tenderness.  AT 188.  Based upon his examination and review of the results of an MRI of plaintiff's cervical spine, reflecting multilevel disc disease, multilevel cord compression and multilevel neuroforaminal

_____

[6]   Plaintiff's efforts to secure workers' compensation benefits were apparently unsuccessful, since at the hearing he testified that he had not received any such benefits as a result of his condition.  AT 298.

stenosis, Dr. Kochersperger diagnosed plaintiff as suffering from cervical and lumbar syndrome with radiculitis, and opined that plaintiff suffers from a "mild to moderate" disability causally related to the July 17, 2001 injury.[7] AT 187-88.

Plaintiff was again examined consultatively on March 14, 2002, on that occasion by Dr. Jogendra Chhabra, who practices with Industrial Medicine Associates, P.C. in Binghamton, New York.  AT 189-93.  Dr. Chhabra's examination once again revealed a full range of motion in plaintiff's shoulders, elbows, forearms and wrists with 5/5 muscle strength in the upper extremity.  *Id.*  A cervical and thoracic spine examination was characterized by Dr. Chhabra as normal, with 80 degree flexion and 20 degree extension in the lumbar spine area.  *Id.*  Based upon his examination, Dr. Chhabra diagnosed the plaintiff as suffering from cervical spondylosis, and chronic backache syndrome, both characterized as stable, and found that plaintiff suffers from moderate limitations in heavy exertional activities such as walking distances and climbing stairs, as well as in rotational activities of the neck involved in travel, and additionally discerned mild limitations associated with household activities.  *Id.*

---

[7]   Dr. Kochersperger also recommended plaintiff's referral to VESID for possible retraining.  AT 188.

Plaintiff was yet again consultatively examined on February 26, 2003, this time by Dr. Mark Henderson, D.O., also practicing with Industrial Medicine Associates, P.C. in Binghamton, New York.  AT 253-57.  Based upon his examination, Dr. Henderson diagnosed the plaintiff as suffering from a history of neck pain/cervical spondylosis and of degenerative disk disease of the lumbar spine.  *Id.*  Dr. Henderson listed plaintiff's prognosis as "[f]air" and noted a "moderate restriction for heavy lifting and carrying" and "a mild restriction for prolonged standing or prolonged walking."  *Id.*

Plaintiffs' medical records were reviewed, and physical residual functional capacity ("RFC") assessments completed, by agency consultants in March of 2002, and again in March of 2003, with relatively similar findings.  AT 195-202, 258-63.  Both of those RFC assessments reflect plaintiff's ability to carry up to twenty pounds occasionally, and not more than ten pounds frequently, and to stand and/or walk, and to sit, for about six hours in an eight hour work day, with no limitations regarding his ability to push or pull.  AT 196, 259.  The second of those RFC assessments also notes certain restrictions in the areas of climbing,

balancing, stooping, kneeling, crouching and crawling.[8]  AT 259-60.

Despite his medical conditions, plaintiff is able to engage in a wide array of non-work related activities.  In a written description of his daily activities prepared on February 15, 2003, plaintiff reported that he drives, cooks, performs light housework, and assists in the care of the child living in the household.  AT 124-31.  In that report plaintiff also indicated that he is able to mow the lawn, using a riding lawn mower, and to go outside his home each day, including for shopping.  *Id.*  During his hearing testimony plaintiff confirmed his ability to perform household chores, including washing dishes, cleaning floors and assisting with the laundry, as well as to help care for the child residing in the home, although he stated that he has experienced difficulties in mowing the lawn.  AT 296-98, 300-01.

II.    PROCEDURAL HISTORY

    A.    Proceedings Before The Agency

Plaintiff filed an application for disability insurance benefits on February 6, 2003, alleging a disability onset date of July 17, 2001.[9]  AT

---

[8]    The March, 2002 RFC assessment was less limiting in these areas, finding that plaintiff should only occasionally stoop and crouch, but was not limited with regard to climbing, balancing, kneeling or crawling.  AT 197.

[9]    That application was preceded by a similar application, filed on February 15, 2002.  AT 51-53.  Plaintiff's earlier application was denied on March 28, 2002, and he failed to pursue that claim through the administrative process.  AT 33-34, 40-44.

54-56.  That application was denied in March, 2003.  AT 35-39.

At plaintiff's request, a hearing was conducted beginning on March 16, 2004, but adjourned until May 19, 2004, before ALJ Harry H. Barr to address the agency's denial of benefits.  AT 291-306.  Following that hearing, ALJ Barr issued a written decision dated June 21, 2004, finding the plaintiff was not disabled, and thus upholding the denial of his application for benefits.  AT 12-22.

In his decision, ALJ Barr applied the familiar, five step sequential analysis to determine the issue of disability.  After concluding at step one that plaintiff did not engage in any substantial gainful activity during the relevant period, ALJ Barr analyzed the medical evidence, concluding at steps two and three that plaintiff suffers from severe medical impairments within the meaning of applicable regulations, including cervical and lumbar disk disease, but those impairments do not meet or equal any of the presumptively disabling conditions listed in the governing regulations, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, including specifically Listing §§ 1.04(a), (b) and (c).[10]  AT 17.  ALJ Barr next proceeded to determine plaintiff's residual functional capacity ("RFC"), finding that he retains the

---

[10]   Plaintiff does not challenge that determination in this proceeding.

ability to lift and carry ten pounds frequently and twenty pounds occasionally; to stand, sit and walk up to six hours in an eight hour day; and to push and pull amounts equal to those applicable to the function of lifting. AT 18. The ALJ also concluded that plaintiff's condition imposed further limitations, finding that he can only perform the exertional demands of light work not involving climbing, crawling or overhead work, nor more than occasional stooping, kneeling, crouching and balancing. *Id.* In arriving at his RFC determination, ALJ Barr considered plaintiff's complaints regarding pain, and found them not to be fully credible given the medical evidence in the record as well as the extent of his daily activities. *Id.*

Applying his RFC findings, ALJ Barr concluded that plaintiff is unable to perform any of his past relevant work in light of the exertional requirements associated with those positions. AT 19. After reviewing the medical vocational guidelines (the "grid") set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P., App. 2, and utilizing the grid as a framework, noting that the conclusion of no disability would be dictated, ALJ Barr then considered the testimony of Karen Kane, a vocational expert, elicited to determine whether the limitations imposed by plaintiff's condition so

eroded the range of available jobs indicated by use of the grid as to negate its applicability in plaintiff's case.  Based upon a hypothetical question posed to the expert, containing features closely approximating plaintiff's limitations, *see* AT 303, the ALJ concluded that there are several positions available in the national and local economies which plaintiff is capable of performing, notwithstanding his limitations, including as a cashier, counter attendant, fast food worker, assembler, ticket taker, and telephone receptionist.  AT 20.  On that basis, the ALJ concluded that plaintiff was not disabled.  AT 20-21.

The ALJ's decision became a final determination of the agency when, on January 8, 2005, the Social Security Administration Appeals Council denied plaintiff's request for review.  AT 4-6.

B.    This Action

Plaintiff commenced this action on January 26, 2005.  Dkt. No. 1. Issue was thereafter joined by the Commissioner's filing of an answer, accompanied by an administrative transcript of the proceedings and evidence before the agency, on March 8, 2005.  Dkt. Nos. 3, 4.  With the filing of plaintiffs brief on April 22, 2005, Dkt. No. 5, and a brief on behalf of the Commissioner on May 6, 2005, Dkt. No. 6, this matter is ripe for

determination and has been referred to me for the issuance of a report

and recommendation pursuant to 28 U.S.C. § 636(c) and Northern District

of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[11]

III.   DISCUSSION

     A.   Scope Of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987)).  Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, her

decision should not be affirmed even though the ultimate conclusion

---

[11]   This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and subsequently amended and reissued by then-Chief District Judge Frederick J. Scullin, Jr., on September 12, 2003.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp.2d at 148. If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the

substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed.  42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148.  In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning.  *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level.  *See Lisa v. Secretary of Dep't of Health and Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991).  Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency.  *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49,

57 (2d Cir. 1992); *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

     B.    Disability Determination - The Five Step Evaluation Process

     The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.] " 42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

     The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it

becomes incumbent upon the agency to prove that the claimant is capable

of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that

burden has been met, the ALJ should consider the claimant's RFC, age,

education, past work experience, and transferability of skills.  *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

     C.    <u>The Evidence In This Case</u>

_____In support of his challenge to the agency's determination, plaintiff

maintains that opinions of his treating physicians, as well as his subjective

complaints of pain, were improperly discounted without sufficient basis

and explanation, and additionally that the ALJ's RFC finding is not

supported by substantial evidence.

     1.    <u>Treating Physician</u>

_____Ordinarily, the opinion of a treating physician is entitled to

considerable deference, provided that it is supported by medically

acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with other substantial evidence.[12]  *Veino*, 312 F.3d at 588;

---

[12]    The regulation which governs treating physicians provides:

*Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling, however, if contrary to other substantial evidence in the record.  *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Id.*

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *See Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

---

Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

22

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

A review of the ALJ's determination does not reveal consideration and rejection of any opinions from plaintiff's treating physicians regarded by him as inconsistent with his findings.  It is true that rather than specifically basing his conclusions upon particular findings of plaintiff's treating sources, in his opinion ALJ Barr instead references the findings of Dr. Mark Henderson and Dr. Jogendra Chhabra, both of whom were consulted for opinions.  Those consultants, while not properly regarded as meeting the criteria for consideration as treating physicians, *see* 20 C.F.R. § 404.1527(d), are professionals whose opinions can provide can provide substantial evidence supporting an ALJ's findings particularly, as is the case in this instance, when they are not inconsistent with opinions of a treating source.  *Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.).

Plaintiff's brief provides no illumination regarding his arguments in this regard, not only pointing to no treating source opinions in conflict with the ALJ's findings but additionally serving lend confusion by referring to Dr. Mark Henderson, an orthopedic consultant, as a treating source. *See* Plaintiff's Brief (Dkt. No. 5) at 8. While the plaintiff's brief does correctly identify Dr. Victor Sukumar and Dr. John Regan as treating sources, it fails to cite any opinions from those individuals which are inconsistent with the ALJ's RFC findings. The court has scoured the records associated with care and treatment provided to the plaintiff by those two physicians, and can find no patent inconsistencies between any opinions of those treating sources and the ALJ's findings which would require proper explanation.[13]

### 2. Pain

An ALJ must take into account subjective complaints of pain in making the five step disability analysis. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant.

---

[13]   Plaintiff's quarrel appears to be with the ALJ's reliance upon opinions of non-examining review physicians to support his determination. *See* Plaintiff's Brief (Dkt. No. 5) at 9.

*Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective

testimony, including testimony concerning pain. *See Mimms v. Heckler,*

750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that

discretion the ALJ must consider a variety of factors which ordinarily

would be relevant on the issue of credibility in any context, including the

claimant's credibility, his or her motivation, and the medical evidence in

the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL

59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.)

(citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an

independent judgment concerning the actual extent of pain suffered and

its impact upon the claimant's ability to work.  *Id.*

When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[14]  *Barnett*, 13 F. Supp.2d at 316; *see also*

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony

---

[14]  In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

concerning the intensity, persistence or functional limitations associated

with his or her pain is not fully supported by clinical evidence, however,

then the ALJ must consider additional factors in order to assess that

testimony, including: 1) daily activities; 2) location, duration, frequency and

intensity of any symptoms; 3) precipitating and aggravating factors; 4)

type, dosage, effectiveness and side effects of any medications taken; 5)

other treatment received; and 6) other measures taken to relieve

symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective

medical evidence, and any other factors deemed relevant, the ALJ may

accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d

at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such

testimony is rejected, however, the ALJ must explicitly state the basis for

doing so with sufficient particularity to enable a reviewing court to

determine whether those reasons for disbelief were legitimate, and

whether the determination is supported by substantial evidence.  *Martone*,

70 F. Supp.2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial

evidence, the decision to discount subjective testimony may not be

disturbed on court review.  *Aponte v. Secretary, Dep't of Health & Human Servs. of U.S.,* 728 F.2d 588, 591 (2d Cir. 1984).

Once again, plaintiff's brief is less than clear as to the precise nature of the claimed limitations resulting from the pain which he allegedly experiences.  Undoubtedly, as he apparently asserts, plaintiff does suffer from some degree of discomfort as a result of his back and neck conditions.  The fact that he suffers from discomfort, however, does not automatically qualify him as disabled, since "disability requires more than mere inability to work without pain."  *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

In this instance the ALJ concluded that the medical evidence did not corroborate plaintiff's complaints of pain.  AT 18.  As the ALJ pointed out, plaintiff's medical records reflect that his condition is stable, requiring only conservative treatment through exercise and mild pain relief medication. *Id.*  In evaluating plaintiff's complaints of pain, the court has noted that on January 6, 2004 he stated to Dr. Regan that he had no complaints, stating that he felt fine except when the weather was "really cold".  AT 264-65.

In evaluating plaintiff's arguments regarding pain, I have considered those circumstances, as well as the fact that plaintiff was advised in

November of 2001 by Patricia Shay, a nurse practitioner, to continue a
conservative course of treatment, AT 152, and by Dr. Sukumar in
December of 2001 to come back in a year unless required to sooner, AT
150.  The intermittent nature of the treatment reflected in plaintiff's
medical records is inconsistent with claims of the existence of debilitating
pain.  *See*, *e.g.*, *Carlson v. Barnhart*, No. 3:05CV1584, 2006 WL 2926818,
at *13 (D. Conn. Aug. 30, 2006).

When examining plaintiff's pain complaints the ALJ also took into
account plaintiff's activities, finding them to be inconsistent with his
complaints of debilitating pain.[15]  As the ALJ noted, plaintiff's own
accounts of his daily activities belie the claim that his pain is debilitating.
At various times plaintiff has reported that notwithstanding his medical
condition he is able to drive, care for a child, cook, clean, mop and
vacuum the floor, do laundry, assist in shopping for groceries and run
errands.  AT 95-98, 125, 296-97.  Plaintiff has also stated that he is able
to go to dinner, to the movies and to the park, and to ride a bicycle as well
as utilize a riding lawn mower to cut grass.  AT 99, 127.  Moreover, as the

---

[15]   It should be noted that at no point during his hearing testimony did plaintiff
expressly state that the pain which he experiences precludes him from performing any
work.

ALJ noted, during one visit to his treating physician plaintiff reported not only swimming but utilizing the diving board on more than one occasion in or about July of 2003.  *See* AT 266.  Given these circumstances, the ALJ properly rejected plaintiff's claim of debilitating pain, and that rejection is adequately explained in his decision.  *See* AT 18.

### 3.    The ALJ's RFC Finding

Indirectly, plaintiff challenges the ALJ's conclusion that plaintiff is able to perform light and sedentary work, with additional limitations.[16]

---

[16]   By regulation light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  Sedentary work is defined by regulation as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in

---

20 C.F.R. § 404.1567(a).

the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp. 300, 309-10 (E.D.N.Y. 1997).

In this instance plaintiff's RFC finding is adequately supported by the record including RFC assessments by two non-examining consultants who reviewed plaintiff's records.  Significantly, the ALJ's RFC finding is not directly contradicted by any evidence in the record including, notably, opinions of plaintiff's treating physicians.  It is true that in his report Dr. Kochersperger characterizes the plaintiff as suffering from "a mild to moderate. . . disability[.]"  AT 188.  That statement, however, was  made in the context of an examination conducted with an eye toward determining whether plaintiff was qualified to receive workers' compensation benefits under a disability standard which is not necessarily co-extensive with that which obtains under the Social Security Act.  *See Gray v. Chater*, 903 F.Supp.2d 293, 301 (N.D.N.Y. 1995) (Koeltl, J.)  In any event, such a statement addresses an ultimate issue of disability which is reserved to the Commissioner, and thus is not entitled to deference even if it were the opinion of a treating physician.  20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 77 F.3d 128, 133 (2d Cir. 1999).

In sum, the ALJ's RFC finding, which serves as the lynchpin for his conclusion of his determination of no disability, is supported by the opinions of two consultants having reviewed plaintiff's medical records, and is not undercut by either those records or any contrary opinions of treating sources.  Accordingly, I recommend a finding that the ALJ's RFC finding is supported by substantial evidence.

### 4.    Step Five Determination

In his brief, plaintiff maintains that the ALJ's reliance on the testimony of a vocational expert to satisfy her burden at step five of the sequential analysis was improper.

It is well accepted that the Commissioner may rely upon the testimony of a vocational expert to satisfy her burden, at step five of the sequential, disability analysis, of proving the existence of jobs in the national economy in sufficient numbers capable of being performed by the plaintiff.  *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); *Dwyer v. Apfel*, 23 F. Supp.2d 223, 229-30 (N.D.N.Y. 1998) (Hurd, M.J.) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)); *see also* 20 C.F.R. §§ 404.1566, 416.966. The propriety of such reliance quite obviously depends upon whether the

facts relied upon by the expert – typically recounted in the form of hypothetical questions, as was the case in this instance – are supported by substantial evidence.  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  The hypothetical posed to the expert in this case is fully consistent with an RFC finding which, I have already concluded, is supported by substantial evidence.  Under these circumstances, the ALJ's acceptance of the vocational expert's opinion, to the effect that jobs exist in the national economy in sufficient numbers capable of being performed by the plaintiff, was proper.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

In arriving at his determination of no disability the ALJ carefully considered the medical and other evidence in the record, and concluded that plaintiff retains the RFC to perform light and sedentary work involving neither climbing, crawling, or overhead work nor more than occasional stooping, kneeling, crouching, and balancing.  That RFC finding, which formed the basis for the opinion of a vocational expert that there exists a sufficient number of jobs in the national economy capable of being performed by the plaintiff, is supported by substantial evidence.  In arriving at his RFC determination, the ALJ did not reject any contradictory opinions

of treating sources, and to the extent that he did partially reject plaintiff's

subjective testimony regarding the pain which he experiences and its

resulting limitations, that rejection both was properly explained and is

supported by substantial evidence.  It is therefore hereby

RECOMMENDED that defendant's motion for judgment on the

pleadings be GRANTED, the Commissioner's determination of no

disability AFFIRMED, and plaintiff's complaint in this case be DISMISSED

in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court within ten (10) days.  FAILURE TO SO

OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*,

984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties by regular mail.

Dated:      November 21, 2006
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

34